IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID BOHYEON LIM | : | CIVIL ACTION |
| v. | : | |
| MATHU RAJAN, et al. | : | NO. 13-1385 |

MEMORANDUM

Bartle, J.    September 18, 2013

Plaintiff David Bohyeon Lim ("Lim"), acting pro se, has filed this diversity[1] action asserting common law breach of contract, unjust enrichment, and quantum meruit claims against defendants Mathu Rajan ("Rajan"), STV Networks, Inc. ("STV"), Young K. Park ("Park"), the Law Offices of Young K. Park (the "Park Firm"), David B. Ahn ("Ahn"), and Phila Ilbo, Inc. ("Phila

---

1. Lim avers that he is "residing" in Maryland. He further alleges: (1) Rajan "regularly conducts business" at 2009 Chestnut Street, Philadelphia, Pennsylvania, (2) STV Networks, Inc., is a Pennsylvania corporation with a principal place of business located at the same address, (3) Ahn resides at 427 West Cheltenham Avenue, Melrose Park, Pennsylvania, and (4) Phila Ilbo is a Pennsylvania corporation with a principal place of business located at the same 427 West Cheltenham Avenue address. Defendants have not contested Lim's pleadings with regard to citizenship. We take judicial notice that, according to the Pennsylvania and Delaware online corporation search tools, STV Networks, Inc. is in fact a *Delaware* corporation with a registered Pennsylvania office at 1105 William Penn Drive, Bensalem, Pennsylvania, and Phila Ilbo is a Pennsylvania corporation with a registered office at 89 Bruce Drive, Holland, Pennsylvania. Neither "STV Networks" nor "Phila Ilbo" yields search results in the Maryland Department of Assessments & Taxation corporation search tool. The amount in controversy clearly exceeds $75,000, exclusive of interest and costs. See 28 U.S.C. § 1332(a).

Ilbo").[2]  The lawsuit involves the 2008 sale of assets of Korean Daily Tribune, Inc. ("Tribune"), a Korean newspaper, to STV, and an accompanying 2008 Employment Agreement between Lim and STV.

Two motions to dismiss are before the court.  One, filed by Rajan, CEO of STV, contends that the complaint fails to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  He asserts that all of Lim's claims arise from the alleged breach of the Purchase and Sale Agreement and Employment Agreement and that he was not a party to either in his individual capacity.  He also maintains that Lim was not a party in any individual capacity to the Purchase and Sale Agreement.  The second motion to dismiss was filed by STV, also under Rule 12(b)(6).  STV, like Rajan, argues that Lim was not a party in his individual capacity to the Purchase and Sale Agreement.  It further contends that Lim's claims are barred in their entirety by Pennsylvania's four-year statute of limitations for contract and related actions.

---

2. In a June 12, 2013 order, the court granted as unopposed the motions to dismiss filed by defendants Park and the Park Firm. Thus, with all claims against Park dismissed, Lim's Count XI, "Negligence of Young K. Park," is not before us.  In his Supplemental Response in Opposition to the defendants' motions to dismiss, Lim also states that he has made "an effort to reveal the Defendants' illegal conduct of conversion (selling assets to a third party without clearing title.)"  Lim, however, has not pleaded conversion against defendants.  Finally, Lim's praecipe to enter default judgment against defendants Ahn and Phila Ilbo remains pending before the court.

I.

When deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and draw all inferences in the light most favorable to the plaintiff. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Umland v. Planco Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008). We must then determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim must do more than raise a "'mere possibility of misconduct.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at 679). Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. On a motion to dismiss, the court may consider "allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citing 5A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 299 (2d ed. 1990)).

II.

The following facts for present purposes are accepted as true or taken in the light most favorable to the plaintiff. In early 2008, Lim was "President, the sole Agent and sole Owner

of" Tribune, a media and magazine business that had grown over nearly thirty years.  On February 5, 2008, Tribune entered into a Purchase and Sale Agreement ("Purchase Agreement") with STV to sell all of Tribune's assets in exchange for "a number of [STV's] Common Stock with an aggregate Buyer's Common Stock Value equal to Three Hundred Fifty Thousand Dollars ($350,000.00), $200,000.00 in cash and assumption of [Tribune's] liability attached hereto as Exhibit A."  Additionally, § 2.1(b) of the Purchase Agreement provided that Lim would be employed by STV according to terms to be set forth in a future employment agreement that would supersede the employment clause of the Purchase Agreement.  The closing date was to be "as soon as practicable" after all closing conditions had been met.

The February 5, 2008 Purchase Agreement was executed for STV by Park as "General Counsel" and by Lim as Tribune's "President."  An identical version of the Purchase Agreement, for some unexplained reason, was again executed on March 18, 2008, this time by Lim as President for Tribune and by Mathu Rajan as STV's "CEO."  Section 12.5 of the Purchase Agreement expressly disclaims any third party beneficiary rights.  It states that "[n]othing herein shall create or be deemed to create any third party beneficiary rights in any person or entity not a party hereto (including, without limitation, any employee or former employee of [Tribune] or its affiliates[)]."  Lim is not named as a party in the Purchase Agreement.

-4-

There was also a separate one-page "Merger Agreement" executed on March 18, 2008 by Park as "General Counsel" for STV and Lim as "Chairman" for Tribune. It provides in Paragraph 2 that "[STV] shall pay Chairman Lim $200,000 for the company building and $350,000 in [STV] stocks for his 28.5 years of his contribution in managing the company." The Merger Agreement explains the sale of Tribune's assets to STV in summary fashion and adds that the "merger shall take effect starting April 1, 2008." Thus, the Purchase Agreement contemplates the payments for the purchase of assets on closing to be made to Tribune, whereas the Merger Agreement, executed on the same day, provides these same dollar payments to be made directly to Chairman Lim. It is not totally clear whether these agreements refer to the same or different consideration on closing.

Lim's promised Employment Agreement is dated April 1, 2008.[3] The Employment Agreement provides that Lim would be employed by STV as the "Associate Director of Operations for Chosun Daily Division" for a term of six years in exchange for, among other compensation: (1) a $60,000 yearly salary, "payable in accordance with the Company's standard payroll procedures;" (2) options to purchase 300 STV shares at $39.17 per share that

---

3. We do not know who, if anyone, executed the Employment Agreement because no signature page has been submitted to the court. Lim's complaint explains that "Plaintiff entered into a six (6) year employment contract with Defendants, Mathu Rajan and STV Network, Inc," which is not disputed as to STV. Without deciding the issue, we therefore take it as true for present purposes that STV entered into the Employment Agreement with Lim on April 1, 2008.

-5-

would vest in groups of 50 to 100 shares over the following 24 months, exercisable for 10 years from the date of the Employment Agreement; and (3) the tax-free reimbursement of Lim's COBRA medical expenses.  From the time of the Employment Agreement's execution to November 2008, STV paid Lim $5,000 per month and COBRA payments of $1,011.80 per month.

Beginning in November 2008, Lim's monthly salary was reduced "unilaterally and without prior written consent" to $4,500.  Further reductions have followed such that Lim now claims $251,250 with interest for unpaid salary through the March 2014 end of the six-year Employment Agreement.  Similarly, Lim asserts that STV has not paid him for COBRA reimbursements since December 2008.  He claims $50,590 in past due benefits through February 2013 and $13,153.40 for COBRA benefits through the end of the six-year employment term.

In addition to these amounts, Rajan and STV "have not paid $350,000.00 in value of stock of [STV] to Plaintiff as agreed in the Agreement."  Lim does not say if this liability stems from the Purchase Agreement, which grants $350,000 in STV stock to Tribune, or the Merger Agreement, which appears to grant $350,000 in STV stock to "Chairman Lim," or both.[4]

Finally, since November 2008, Tribune's liabilities that STV assumed on closing in the Purchase Agreement have not

---

4.  Lim does not specifically mention in his complaint the $200,000 cash payments specified in the Purchase Agreement and the Merger Agreement.

been paid. STV assumed Tribune's liabilities, vaguely described in Exhibit A and incorporated by reference into the Purchase Agreement in § 2.1, on a Revolving Loan, Home Equity Loan, Deposit Money Loan, and 5th Street Building Deposit. STV began payment in April 2008. Payment ceased on the first three of these obligations in November 2008. Likewise, the 5th Street Building Deposit came due on April 8, 2012 and has not been paid. Lim claims that STV's failure to pay the Home Equity Loan resulted in the sale of his home at public auction on October 16, 2010 and the loss of his accumulated home equity. He further claims that the failure to pay the Revolving Loan has caused him several subsequent denials of credit. In total, Lim avers that he is owed $1,411,547.40 from all defendants for all claims.

Lim first contacted Park regarding STV's failure to honor "the Agreement" in November 2008. At that time Lim was told that "once [STV]'s financial situation had improved, all past due monies would be paid." Despite Lim's numerous subsequent attempts at correspondence with Rajan and Park in 2009 and 2012, in which he demanded action and threatened "to seek equitable remedy under the contracts," Lim was unsuccessful in obtaining payment. He eventually learned on April 2, 2012 from Raja Rajan, Mathu Rajan's brother, that STV had sold Tribune "some time ago" due to management difficulties and that STV was

in the process of being shut down as a company.[5] Lim filed his complaint in this court on March 15, 2013.

III.

At the outset, we note that Lim has not alleged that Rajan is a Pennsylvania citizen. 28 U.S.C. § 1332(a). Simply pleading in this diversity action that he "regularly conducts business" in Pennsylvania is not sufficient. From the record before us, we do not have subject matter jurisdiction over Rajan.

Recognizing that Lim is proceeding pro se and assuming for present purposes that Rajan is a Pennsylvania citizen, we will address Rajan's argument under Rule 12(b)(6) that Lim's claims against him should be dismissed because Rajan was not personally a party to any relevant agreement. Since this case invokes the court's diversity jurisdiction under 28 U.S.C. § 1332(a), we are bound to follow Pennsylvania's substantive law. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). It is a bedrock principle of the Commonwealth's corporation law that an officer is ordinarily not liable for the contractual obligations of the corporation. First Realvest, Inc. v. Avery Builders, Inc., 600 A.2d 601, 603 (Pa. Super. Ct. 1991). While a court may sometimes lift this shield, "Pennsylvania law ... recognizes a strong presumption against piercing the corporate veil." In re

---

5. A February 10, 2011 Asset Purchase Agreement attached to Lim's supplemental response in opposition to the defendants' motions to dismiss reflects a sale of the Tribune assets to STV Korea, Inc. ("STV Korea") that included an assumption by STV Korea of STV's liabilities under the Purchase Agreement and Employment Agreement up to $150,000.

Blatstein, 192 F.3d 88, 100 (3d Cir. 1999); see also Bennett v. Itochu Int'l, Inc. 682 F. Supp. 2d 469, 478 (E.D. Pa. 2010).

A court should consider the following factors in determining whether to pierce the veil and hold an individual liable for an action of the corporation: (1) undercapitalization; (2) failure to adhere to corporate formalities; (3) intermingling of funds; and (4) the use of the corporate form to perpetrate a fraud. Eastern Minerals & Chems. Co. v. Mahan, 225 F.3d 330, 333 n.6 (3d Cir. 2000) (citing Lumax Indus., Inc. v. Aultman, 669 A.2d 893, 895 (Pa. 1995)). A finding of fraud is not strictly required, and the court may disregard the corporate entity if "necessary to avoid injustice." Ragan v. Tri-County Excavating, Inc., 62 F.3d 501, 508 (3d Cir. 1995) (quoting Rinck v. Rinck, 526 A.2d 1221, 1223 (Pa. Super. Ct. 1987)). Notwithstanding this flexibility, piercing the corporate veil is "an extraordinary remedy preserved for cases involving exceptional circumstances." Ragan, 62 F.3d at 516 (quoting Village at Camelback Prop. Owners Ass'n, Inc. v. Carr, 538 A.2d 528, 533 (Pa. Super. Ct. 1988)).

Lim has failed to plead any facts to support piercing the veil. He simply alleges that STV did not compensate Lim and is in breach of the Employment Agreement and the Purchase Agreement. Even if Rajan executed the agreements as STV's CEO and Lim's post-breach dealings with STV were often through Rajan, these allegations are not the "exceptional circumstances" that must be pleaded before the court may pierce the corporate veil.

Ragan, 62 F.3d at 516. There have been no facts set forth in the complaint to show that Rajan was operating in anything other than a representative capacity for STV.

In sum, Lim has not set forth any facts demonstrating that the court has subject matter jurisdiction over Rajan. Even if we do, Lim has not stated a claim for relief against Rajan under Rule 12(b)(6).

IV.

We will next address the argument made by STV under Rule 12(b)(6) that Lim is not a proper plaintiff under the Purchase Agreement because he was not a party to that contract in his personal capacity.[6] We note initially that Lim individually is a party only to the Employment Agreement. He executed the Purchase Agreement as "President" of Tribune, and he executed the Merger Agreement as "Chairman" of Tribune.

A non-party to a contract cannot ordinarily sue under it. Rottmund v. Cont'l Ins. Co., 76 F. Supp. 1203, 1208 (E.D. Pa. 1990) (citing Twp. of Aston v. Sw. Delaware Cnty. Mun. Airport, 535 A.2d 725, 727 (Pa. Commw. Ct. 1988)). A non-party, however, may nonetheless seek recovery under a contract if he is an intended third party beneficiary. See Hicks v. Saboe, 555 A.2d 1241, 1243 (Pa. 1988).

---

6. Rajan echoes STV's argument in his motion to dismiss. Because his motion will be granted on other grounds, the issue of Lim's third party beneficiary status is moot as to Rajan.

Under Pennsylvania law, the intention of the parties as expressed in the written contract generally controls whether an agreement creates third party beneficiary rights, subject to a narrow exception:

> [A] party becomes a third party beneficiary only where both parties to the contract express an intention to benefit the third party in the contract itself, ... *unless*, the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and the performance satisfies an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

Scarpitti v. Weborg, 609 A.2d 147, 150-51 (Pa. 1992) (citation omitted). When the contract has express language on the issue, Pennsylvania courts usually decline to recognize a third party beneficiary. Medevac MidAtlantic, LLC v. Keystone Mercy Health Plan, 817 F. Supp. 2d 515, 528 (E.D. Pa. 2011).

In Medevac MidAtlantic, the District Court explained that although express disclaimers are not dispositive of the third party beneficiary issue, they are most often given effect: "Pennsylvania courts appear to disregard express disclaimers only where the purported third-party beneficiaries were the sole or primary beneficiaries of the contract's performance.[] In such circumstances, recognizing the intended beneficiary is necessary to give effect to the intent of the parties to provide that benefit." Medevac MidAtlantic, 817 F. Supp. 2d at 530 (footnote omitted). The case law supports this interpretation.

-11-

In Ario v. Reliance Insurance Co., the Commonwealth Court of Pennsylvania, considering a motion for summary judgment, declined to enforce an express disclaimer of third party beneficiary rights in a reinsurance contract because the primary insurer was simply a "fronting company" to circumvent state licensing requirements for the reinsurer rather than a true, primary insurer. 981 A.2d 950, 963-68 (Pa. Commw. Ct. 2009). Under these circumstances, preventing third parties from reaching the reinsurer would not "allow the program to continue to operate as it did before [the primary insurer's] insolvency" and would "completely up-end" the insurance relationship actually contemplated in the contract. Id. at 967-68. The court therefore allowed hospital-plaintiffs covered under a malpractice plan to recover from the reinsurer directly. Id. at 968.

Outside of the insurance context, our court has declined to enforce an express disclaimer of third party beneficiary rights in a summary judgment setting when it was known that the contract was consummated specifically to meet a third party's needs. State Farm Mut. Ins. Co. v. HHS Assocs., No. 93-5943, 1995 WL 739703, at *1 (E.D. Pa. Dec. 1, 1995). State Farm purchased a parcel of land from HHS Associates. State Farm, 1995 WL 739703, at *1. As part of the purchase, HHS contracted with SMC Environmental Services Group to perform an environmental assessment on the property that ultimately failed to discover hydrochemicals that were in the soil. Id. The SMC-HHS contract had an express disclaimer of third party rights, but

-12-

there was "deposition testimony that SMC knew the environmental study was commissioned specifically for State Farm's purposes as purchaser of the property." Id. Citing Scarpitti, the court noted that State Farm would have an uphill climb to prove that it was an intended third party beneficiary but declined to grant SMC summary judgment based on the written terms of the contract. Id.

In light of these decisions, we are unable at this early stage to determine whether Lim is a third party beneficiary of the Purchase Agreement. As Lim correctly notes, we are required to hold his pro se complaint to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-21 (1972). Doing so here, we cannot say whether recognizing Lim as a third party beneficiary would be "appropriate to effectuate the intention of the parties, and the performance satisfies an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." Scarpitti, 609 A.2d at 150-51.

On one hand, there is an express disclaimer of third party beneficiary rights in the Purchase Agreement, which Lim himself twice signed on behalf of Tribune. This will present Lim with an onerous burden. State Farm, 1995 WL 739703, at *1. Indeed, Tribune presumably has survived the 2008 asset sale with Lim intact as "President, the sole Agent and sole Owner" and could thus enforce its own rights to post-March 15, 2009 payments under the Purchase Agreement. This lessens concerns that a

-13-

failure to recognize Lim's right to sue would frustrate the parties' intent.  Furthermore, the Purchase Agreement only refers to Lim personally in § 2.1(b) outlining his employment.  That provision was explicitly superseded by the Employment Agreement and is not relevant to the debt obligations listed in Exhibit A.

On the other hand, Lim avers that STV's failure to pay Tribune's debt obligations under § 2.1 and Exhibit A to the Purchase Agreement caused the foreclosure and sale of his home.  Lim further alleges that STV's failure to pay the Revolving Loan caused him to be denied credit on several occasions.  On the face of the complaint and attached exhibits, and with no specific analysis of the issue by any of the parties, we will give Lim an opportunity to attempt to establish that it was the intent of the parties to give him rights as a third party beneficiary under the Purchase Agreement.  Scarpitti, 609 A.2d at 150-51; Medevac MidAtlantic, 817 F. Supp. 2d at 530.  Recognizing that the exception to enforcement of an express disclaimer of third party beneficiary rights in Pennsylvania law remains an exceedingly narrow one, we will deny STV's motion to dismiss Lim's claims under the Purchase Agreement on the ground that he is not a party or a third party beneficiary.

V.

We finally turn to the argument made by STV under Rule 12(b)(6) that Lim's claims against it are time-barred.  The complaint was filed on March 15, 2013.  As STV notes, the statutory period for breach of contract in Pennsylvania is

generally four years. 42 Pa. Cons. Stat. Ann. § 5525(a)(8). Unjust enrichment claims are subject to the same bar, <u>Sevast v. Kakouras</u>, 915 A.2d 1147, 1153 (Pa. 2007) (citing <u>Cole v. Lawrence</u>, 701 A.2d 987, 989 (Pa. Super. Ct. 1997)), as are <u>quantum meruit</u> actions. <u>Cole</u>, 701 A.2d at 989. In Pennsylvania, "the statute of limitations period begins to run when a cause of action accrues; <u>i.e.</u>, when an injury is inflicted and the corresponding right to institute a suit for damages arises." <u>Gleason v. Borough of Moosic</u>, 15 A.3d 479, 361-62 (Pa. 2011).[7]

      The complaint in this case demonstrates clearly that Lim had actual knowledge as early as November 2008 that STV had failed to pay certain amounts due and that he or Tribune had been injured as a result. Lim pleads that "[w]hen Defendants, Mathu Rajan, STV Network, Inc. and Young K. Park, CEO of the STV Networks, Inc.'s Korean newspaper operation first did not comply with the Agreement in November 2008, Plaintiff contacted Defendant, Young K. Park ... requesting compliance with the Agreement." After receiving assurances of future payment, Lim then "waited and received no update or response" from Park from November 2008 to February 2009. Lim's future correspondence with

---

7. STV incorrectly cites <u>Antonioli v. Lehigh Coal & Navigation Co.</u>, 451 F.2d 1171, 1175 (3d Cir. 1971), and <u>Sandutch v. Muroski</u>, 684 F.2d 252, 254 (3d Cir. 1982), for the proposition that federal law – not state law – determines when a cause of action accrues. While this is true in cases invoking federal question jurisdiction with no federal statute of limitations, the court must look to state law for both the limitations period and accrual in a diversity action. <u>Britt v. Arvanitis</u>, 590 F.2d 57, 59 (3d Cir. 1978); <u>see</u> <u>also</u> <u>Dixon Ticonderoga Co. v. Estate of O'Connor</u>, 248 F.3d 151, 160-62 (3d Cir. 2001).

the defendants similarly reflected actual knowledge that the defendants had not fulfilled their contractual obligations to him.

Lim counters that the statute of limitations did not begin to run until at least March 19, 2009. On that date, Lim had a meeting at which Rajan requested an extension to March 24, 2009 to respond to Lim's concerns. Lim argues further that it was not until April 2, 2012 that he became aware that STV did not intend to honor its contractual agreements. This appears to be an attempt to invoke the discovery rule.

The statute of limitations can be tolled by operation of the discovery rule, which prevents the statute from running when the plaintiff is "reasonably unaware of his or her injury at the time his or her cause of action accrued." Gleason, 15 A.3d at 362-63. "The sine qua non of the factual inquiry into the applicability of the discovery rule ... is the determination whether, during the limitations period, the plaintiff was able, through the exercise of reasonable diligence, to know that he or she has been injured and by what cause." Id. At 363. While this factual determination is often a question for the jury, the court may decide it as a matter of law when "reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause." Id. at 364 (quoting Fine v. Checcio, 870 A.2d 850, 858-59 (Pa. 2005)).

Reasonable minds would not find the discovery rule applicable in this case. In his complaint, Lim has thoroughly acknowledged that he had actual knowledge of the defendants' breach of their contractual obligations when they happened. Indeed, he promptly attempted communications with the defendants in November 2008 upon the occurrence of the first breach. While it may have been true that Lim did not know until April 2012 "that STV had no intention of honoring its contractual agreements," this does not change the fact that Lim was well aware of his contractual injuries as they happened. The statute begins to run "when an injury is inflicted and the corresponding right to institute a suit for damages arises." Gleason, 15 A.3d at 361.

By the terms of the Purchase Agreement, the consideration of $200,000 in cash and $350,000 in "stock value" was due on closing. The Purchase Agreement does not recite a specific closing date. It simply states that closing was to be "as soon as practicable after all the conditions to Closing ... shall be satisfied or duly waived." Lim avers at several points in his complaint that STV began making payments in April 2008 on Tribune's liabilities that it was to assume on closing. We infer an April 2008 closing date for the Purchase Agreement. This is more than four years before Lim filed his March 15, 2013 complaint.

The Merger Agreement provides that the "merger shall take effect starting April 1, 2008" without specifying whether

the $200,000 in cash and $350,000 stock value due to "Chairman Lim" were to be paid on that date.  It is well settled under Pennsylvania law that "'where no time for performance is provided in the written instrument the law implies that it shall be done within a reasonable time ...' depending on the nature of the business."  Field v. Golden Triangle Broad. Inc., 305 A.2d 689, 694 (Pa. 1973) (quoting Lefkowitz v. Hummel Furniture Co., 122 A.2d 802, 804 (Pa. 1956)).

What constitutes a "reasonable time" is often a question of fact.  Restatement (Second) of Contracts § 41; Textron, Inc. v. Froelich, 302 A.2d 426, 427 (Pa. Super. 1973).  Here, the contracts were executed on March 18, 2008, and the complaint was not filed until March 15, 2013.

To bring the action within the four-year statute of limitations, we must determine whether a reasonable time for payment of the $200,000 in cash and $350,000 in stock value extended to March 16, 2009.  Lim has pleaded no facts and cited no authority to support the proposition that a reasonable time for these payments extends for nearly one year after closing in circumstances involving the sale of a company's assets.  We conclude that a delay of almost a year is not a reasonable time for such performance under either the Purchase Agreement or the Merger Agreement.  Any breach of contract, unjust enrichment, or quantum meruit claims for the $200,000 in cash and $350,000 in stock value recited in the Purchase Agreement and in the Merger Agreement are time-barred.  42 Pa. Cons. Stat. Ann. § 5525(a)(8);

Sevast v. Kakouras, 915 A.2d 1147, 1153 (Pa. 2007); Cole v. Lawrence, 701 A.2d 987, 989 (Pa. Super. Ct. 1997).

Lim, however, has other claims which are timely. He asserts breach of his Employment Agreement, which provides that his $60,000 per year salary is to be "payable in accordance with [STV]'s standard payroll practices." While nowhere is it explicitly explained what those "practices" entail, it appears that Lim received his salary and health payments on a monthly basis. "Pennsylvania courts have held that 'where installment or periodic payments are owed, a separate and distinct cause of action accrues for each payment as it becomes due.'" Fresh Start Indus., Inc. v. ATX Telecomm. Servs., 295 F. Supp. 2d 521, 525 (E.D. Pa. 2003) (quoting American Motorists Ins. Co. v. Farmers Bank & Trust Co., 644 A.2d 1232, 1235 (Pa. Super. Ct. 1994)). The claims for salary and health care payments due to Lim under the Employment Agreement on or after March 16, 2009 survive.

Lim may also pursue claims through the options to purchase 300 STV shares at $39.17 per share granted to him under the Employment Agreement. He has ten years, or until April 1, 2018, to exercise these options. While he never states specifically whether or when he has exercised the options and tendered the amount due, Lim has pleaded that he "has satisfied the conditions of the Agreement." If it turns out that Lim has not exercised the options and tendered the money due, this claim will fail.

Under Rule 9(c) of the Federal Rules of Civil Procedure, a plaintiff must only "allege generally that all conditions precedent have occurred or been performed."  Fed. R. Civ. P. 9(c); see also E.E.O.C. v. U.S. Steel Corp., No. 10-1284, 2012 WL 3017869, at *8 (E.D. Pa. July 23, 2012).  There is nothing in the complaint and attached exhibits to establish that the clock has run on the option claims.

Similarly, assuming for the present moment that Lim is able to prove he is a third party beneficiary of the Purchase Agreement, the statute of limitations does not bar Lim's claims founded on STV's non-payment of assumed debt liabilities under Exhibit A to the Purchase Agreement that have come due on or after March 16, 2009.

VI.

In sum, we will dismiss the claims against Rajan for lack of subject matter jurisdiction.  Should such jurisdiction exist, the claims must be dismissed for Lim's failure to state a claim for relief against Rajan.  We will grant the motion of STV under Rule 12(b)(6) to dismiss all of Lim's claims arising on or before March 15, 2009 and deny STV's motion to dismiss as to Lim's claims arising on or after March 16, 2009.